IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**BILL MELOT,**

   **Plaintiff,**

v.                 CIV No. 15-235 LH/CG

**LEE ROBERSON,
UNITED STATES OF AMERICA,
and BOBBY SHAW,**

   **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' Motion to Dismiss Case with Prejudice (ECF No. 10) and Lee Roberson's Motion to Dismiss (ECF No. 27). The Court, having considered these motions, responses thereto, as well applicable case law, concludes that the motions are well taken, will be **granted**, and that this case will be dismissed in its entirety.

### I.  Overview of this Lawsuit

Plaintiff filed his *pro se* Complaint to Recover for Monetary Loss and to Quiet Title and Occupy on March 19, 2015 (ECF No. 1).[1] This Complaint alleges that the Court has jurisdiction pursuant to 28 U.S.C. §§ 1346, 2409 and 2410.[2] It alleges that Plaintiff was and is, the lawful owner of all property described in the Complaint; that Defendant Shaw unlawfully and fraudulently conveyed this property to Defendant Roberson; that Defendant Roberson sold, destroyed, rented or disposed of said property without Plaintiff's consent or authority; and that

---

[1] Because Plaintiff is proceeding *pro se*, the Court will construe his pleadings liberally. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).
[2] These statutes pertain to situations in which the United States is a defendant; actions in which the United States has an ownership interest in lands, as a tenant in common or joint tenant; and, actions affecting property on which the United States has a lien, respectively.

Defendant United States claims interest in the disputed title to these same properties. Plaintiff states that his claims are made pursuant to the Quiet Title Act.

Plaintiff alleges that Defendant United States had tax liens on such properties, but that as of the time of the filing of the Complaint, the United States has no interest in the properties, and that the tax liens are not enforceable.

## II.  Prior Litigation

### A.  *United States v. Melot, et al.*, CIV No. 09-0752 JCH/WPL ("Melot I")

In the current litigation, Plaintiff seeks to quiet title in the same real properties involved in a prior lawsuit in this Court, to-wit:  *United States v. Melot,* CIV No. 09-0752 JCH/WPL ("Melot I").  In that prior litigation, United States District Court Judge Judith Herrera ordered federal tax liens on property to be foreclosed, pursuant to her Memorandum Opinion and Order (ECF No. 141),[3] and granted Final Judgment to Defendants (ECF No. 173).  This judgment in favor of the United States enforced its tax liens and authorized the sale of all of the Melots' property, including property held in the names of several nominees/alter egos.  After entry of final judgment, Plaintiff filed a "plethora of post-judgment motions" to delay the District Court proceedings, including several motions to stay the foreclosure proceedings.  (Order Denying Mot. to Stay Proceedings, ECF No. 223).

By Order dated August 6, 2012, the Court appointed Bobby Shaw as Receiver to arrange for the sale of all property owned by the Melots, as described in that Order. (ECF No. 244).  On January 23, 2013, the District Court entered a Partial Final Judgment against Billy Melot for 1987-1993 federal income taxes in the amount of $8,788,056, as of March 31, 2009.  (ECF No.

---

[3] Unless otherwise noted, all docket numbers mentioned in Section IIA are found in CIV No. 09-0752 JCH/WPL.

318).  The Court also entered judgment against Billy Melot for federal excise taxes in the amount of $6,566,661.  Judgment was entered against Katherine Melot for 1987-1993 federal income taxes in the amount of $8,788,056. The Court determined that the United States was entitled to foreclose its federal tax liens against the Melots' real and personal properties, and apply the net sales proceeds to their outstanding federal income tax liabilities. (*Id.*).

On July 25, 2013, the District Court entered an Order Confirming Judicial Sale of Real Property for a piece of commercial property owned by the Melots located on Sanger Street in Hobbs, New Mexico (ECF No. 368).  Further confirmed sales of properties were disrupted when Katherine Melot filed a Chapter 7 bankruptcy. The United States was allowed to proceed, on August 27, 2013, when the automatic stay was lifted, however progress in this process was again interrupted when Billy Melot filed a Chapter 7 bankruptcy case.  The automatic stay in this second bankruptcy proceeding was lifted, and on December 9, 2013, having found that the Receiver had received the best possible offer, the District Court entered an Order Confirming Judicial Sale of Real Properties and Equipment for $1,125,000.  (ECF No. 411).  This Order provided that, upon payment of this amount, the Receiver Bobby Shaw, was authorized and directed to issue a Receiver's Deed for the real properties, water rights, and equipment described in said Order, to Lee Roberson.

Billy and Katherine Melot appealed this Order.  On April 18, 2014, the Tenth Circuit affirmed the District Court's granting summary judgment, its entry of final judgment and its order appointing a receiver to sell all of the Melots' properties.  *United States v. Melot*, 562 Fed. App'x 646 (10th Cir.)(unpublished), *cert. denied,* 135 S.Ct. 488 (2014).  Specifically, the Tenth Circuit affirmed the judgment of income tax assessments as to both of the Melots, the fuel-excise

3

tax assessments against Billy, the judgment authorizing foreclosure of the tax liens and sale of real properties to satisfy the liens, and rejected the Melots' objections to the Receiver. (*Id.*).

On June 30, 2014, the District Court entered an amended order re-confirming the sale of the Melots' real and personal properties (ECF No. 448).  The sale of the Melots' real properties was completed in July 2014 and a Receiver's Deed was issued to Lee Roberson.  The United States subsequently received the sales proceeds and applied them to the outstanding federal tax liabilities of Katherine and Billy Melot.

The Melots filed a second appeal.  In its April 13, 2015 Order and Judgment, the Tenth Circuit rejected the Melots' main argument that the sale was improperly conducted and that it produced less than the best possible price for the properties sold.  The Tenth Circuit affirmed the June 30, 2014 lower court order confirming the judicial sale of Melots' real property and personal property by Receiver Bobby Shaw to Lee Roberson for the $1,125,000 price.  *United States v. Melot,* 606 Fed. App'x 930 (10th Cir. 2015)(unpublished).

### B. *Melot v. Internal Revenue Service, et al.*, CIV No. 14-687 LAM/GBW ("Melot II")

On June 19, 2014, subsequent to the Tenth Circuit's opinion affirming the judgment of income and excise tax assessments, the judgment authorizing forclosure of the tax liens and sale of real properties to satisfy the liens, and rejection of the Melots' objections to the Receiver, Bill Melot filed a lawsuit in state court.  In this action, he sought to quiet title to certain properties, to gain the right to occupy these properties, to cancel the federal tax liens on these properties, to enjoin collection of his tax liabilities, and to cancel the federal judgment rendered against him. In his Complaint, Mr. Melot alleged that the Court had jurisdiction over his claims to quiet title pursuant to 28 U.S.C. § 2410(a)(1).  The United States removed this case to federal court on

4

August 6, 2014, and it was assigned to United States Magistrate Judge Lourdes Martinez, with CIV No. 14-0687 as the cause number.

One of the grounds raised by the United States in seeking dismissal of Melot II was that Plaintiff's complaint failed to state a claim upon which relief could be granted because this Court has already validated the federal tax liens against Plaintiff and ordered the relevant property sold in Melot I.  In Melot II, Judge Martinez summarized the arguments of the United States, noting that pursuant to res judicata, the United States sought to preclude Plaintiff from contesting the same federal tax liens and seeking to quiet title to the same properties that were involved in Melot I.  (ECF No. 19).[4]  The United States further argued that Plaintiff was precluded from seeking the right to occupy the properties at issue because this too was decided in Melot I, when the Court ordered that the tax liens should be foreclosed against the properties, that the properties should be sold, and that Plaintiff's wife and all other family members must vacate the properties.

In Melot II, Judge Martinez noted that Mr. Melot's complaint sought the cancellation of liens and notices of liens on the same properties involved in Melot I, wherein the Court ordered that the United States was entitled to foreclose its tax liens against those properties and entered an order confirming the sale of the same properties.  (ECF No. 141 in Melot I).  To the extent that Mr. Melot was seeking an injunction regarding the enforcement of tax liens on the properties listed in his complaint, Judge Martinez found that the complaint should be dismissed for lack of subject matter jurisdiction because it was barred by the Anti-Injunction Act.  (ECF No. 19).  To the extent that Mr. Melot was challenging the sale of the properties, Judge Martinez held that the proper forum for such relief would have been in Melot I, as that was the case that ordered the sale of the properties and application of the proceeds of the sale to Plaintiff's tax liability, noting

---

[4] Unless otherwise noted, all docket numbers mentioned in Section IIB are found in CIV No. 14-0687 LAM/GBW.

that "any action in *this* case that would affect any of the orders entered in *that* case would be improper." (*Id.*). "To the extent [Mr. Melot] is seeking an accounting regarding the sale of the properties listed in his complaint, the Court finds that Plaintiff's complaint should be dismissed without prejudice because the proper forum for such a motion would be in [CIV No. 09-752 JCH/WPL]." (*Id.*). For these reasons, Judge Martinez dismissed Mr. Melot's complaint without prejudice, because the proper forum for the relief he sought was Melot I.

### III.  Arguments of the Parties in This Lawsuit

In its current motion to dismiss, the United States relies most heavily on the doctrine of res judicata. The United States argues that this case must be dismissed on the grounds that Mr. Melot's basis for this Complaint centers directly on the court-ordered sale of the real and personal properties in Melot I, and that in effect Mr. Melot is using this suit in an attempt to have this Court review and reverse orders issued in Melot I. The United States argues that this was the basis for dismissal of Mr. Melot's claims by Judge Martinez in Melot II. Further, the United States notes that Mr. Melot already challenged the Court's orders in Melot I, by way of an appeal to the Tenth Circuit, who, on April 18, 2014, affirmed the District Court's orders granting summary judgment, final judgment, and appointing the Receiver to sell the subject properties.[5] Subsequently, on April 13, 2015, the Tenth Circuit affirmed the District Court's order confirming the judicial sale of the Melot's property by the Receiver, Bobby Shaw, to Lee Roberson for the $1,125,000 price.[6] Finally, the United States contends that only an appellate court has jurisdiction to review final decisions of district courts, and therefore this Court lacks jurisdiction to review orders from Melot I, which is in effect what Mr. Melot is seeking in the

---

[5] *See United States v. Melot,* 562 Fed. App'x 646 (10th Cir.)(unpublished), *cert. denied*, 135 S.Ct. 488 (2014).

[6] *See United States v. Melot,* 606 Fed. App'x 930 (10th Cir. 2015)(unpublished).

immediate litigation. For these reasons the United States argues that this case should be dismissed for failure to state a claim as to all named Defendants.

Plaintiff counters with the argument that, in this current lawsuit, he challenges the wrongful actions of Defendants Roberson and Shaw, which were not addressed in previous litigation, and therefore res judicata does not apply.

**IV. The Doctrine of Res Judicata**

Res judicata is a doctrine that addresses the legal effect of an entry of judgment in one lawsuit on subsequent cases that are related to the original case. Subject to some exceptions, this doctrine establishes the rule that once a case has reached a final judgment, many claims or issues related to that case should be treated as finally decided, once and for all. Thus, if res judicata applies to a case, a party who lost a lawsuit will be precluded from litigating not only those claims already raised, but also all others which could have been raised in a prior lawsuit. The policies behind this doctrine are judicial economy and finality in litigation. Res judicata is intended to relieve the parties of the cost or vexation of multiple lawsuits, prevent inconsistent decisions, and encourage reliance on adjudication.

"Under res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the prior action." *Satsky v. Paramount Comm., Inc.,* 7 F.3d 1464, 1467-68 (10th Cir. 1993) (internal quotations omitted). "To apply the doctrine of res judicata three elements must exist: (1) a [final] judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *King v. Union Oil Co.,* 117 F.3d

443, 444-45 (10th Cir. 1997), quoted in *Wilkes v. Wyoming Dept. of Employment of Labor,* 314 F.3d 501, 504 ((10th Cir. 2003).

In this instance, the Court is presented with the question of whether Mr. Melot's claims in the immediate litigation are barred by this doctrine, as having been decided, once and for all, in Melot I. In Melot I, the United States was the Plaintiff and the named Defendants were Billy R. Melot, Katherine L. Melot, KLM Trust, C.D. Properties, Inc., MELM Trust, Q.F. Marketing, Inc., Leigh Corporation, Suzanne Corporation, Mirror Farms, Inc., and C.D. Express, Inc. Judgment on the merits was entered against the Melots and their various corporate entities.

In the immediate case, Bill Melot is the sole Plaintiff, and the named Defendants are the United States, Bobby Shaw and Lee Roberson.

### A. Final Judgment on the Merits in An Earlier Action

There is no dispute that a final judgment on the merits was reached in Melot I. Not only did Melot I proceed to a final judgment on the merits of the case, the Tenth Circuit entertained *two* appeals in that matter. It is generally well settled that, when a trial judge enters judgment, so that the parties are in a position to appeal the judgment, finality has been achieved and this element of res judicata has been satisfied. *See Clay v. U.S.,* 537 U.S. 522, 526 (2003)("[A] federal judgment becomes final for appellate review and claim preclusion purposes when the district court disassociates itself from the case, leaving nothing to be done at the court of first instance save execution of the judgment.").

Furthermore, both of these appeals followed judgments that were "on the merits." As already noted, the district court in Melot I entered judgments against the Melots for unpaid federal income and excise taxes, ordered the foreclosure of federal tax liens, authorized the sale

the Melots' property, appointed a Receiver to sell the property, overruled the Melots' objections to the Receiver, confirmed the sales of the properties, and authorized the Receiver to deed the legal rights to said properties to Mr. Roberson.

In light of these circumstances, it is clear that the first element for res judicata has been met.

### B.  Identity of the Parties or Privies in Melot I and in This Case

Mr. Melot claims in this litigation that the Receiver, Mr. Shaw, acted unlawfully and fraudulently in conveying the property in question to Lee Roberson, and that Lee Roberson has wrongful possession over the property at issue or has disposed of it without Mr. Melot's authority in an unlawful manner.  (Comp. ¶¶ II (2) and (3)).  In other words, in addition to filing suit against the United States, in this latest lawsuit Mr. Melot has sued two individuals who were not specifically named in Melot I.

The second requirement for res judicata is that the parties in a subsequent action must be identical to the parties in the first action, or in privity with parties in the first action.  Clearly this requirement is met insofar as Mr. Melot and the United States are concerned because both were parties in Melot I and of course, are parties in this immediate action.  The remaining issue is whether or not Bobby Shaw and Lee Roberson, who were not parties in Melot I, are privies for purposes of res judicata in this current lawsuit.

There is no definition of "privity" which can be automatically applied to all cases involving the doctrine of res judicata because privity depends upon the underlying circumstances.  *See Lowell Staats Mining Co. v. Philadelphia Electric Co.*, 878 F.2d 1271, 1274-75 (10th Cir. 1989).  Privity may be established if the party to the first suit represented the interests of the party to the second suit.  *Id.* at 1280.

The Court concludes that the court-appointed Receiver, Bobby Shaw, is a privy to the United States for res judicata purposes. By Order dated August 6, 2012, the Court appointed Mr. Shaw to facilitate the sale of property owned by the Melots, as described in that Order.[7] On December 9, 2013, the Court entered an Order Confirming Judicial Sale of Real Properties and Equipment for $1,125,000.[8] This Order provided that, upon payment of this amount, as Receiver, Mr. Shaw was authorized and directed to issue a Receiver's Deed for the real properties, water rights, and equipment described in said Order, to Lee Roberson.[9]

Pursuant to these Orders, the Melots' property fell under the receivership of Mr. Shaw. In that capacity and by virtue of his receivership powers, Mr. Shaw had the right and duty to participate in and control the disposition of the Melots' property, as per direction of the Court. Mr. Shaw was acting as a Receiver on behalf of the United States and can be considered a privy of the United States for purposes of this res judicata analysis.

Furthermore, the purchaser of the property, Mr. Roberson, is in privity with Mr. Shaw. Privity has been found when successive relationships to the same property exist, as by purchase, facilitated in this instance by the conveyance of the Melots' property to Mr. Roberson by Receiver Deed. *See St. Louis Baptist Temple, Inc. v. FDIC,* 605 F.2d 1169, 1175 (10th Cir. 1979).

Clearly, Mr. Melot's current claims against Mr. Shaw and Mr. Roberson call into question the propriety of the process used to sell Mr. Melot's property, following the Court's imposition of tax liens and all subsequent proceedings. The lawfulness of Mr. Shaw's actions in his capacity as Receiver has already been litigated (and upheld by the Tenth Circuit). In Melot I,

---

[7] ECF No. 244 in Melot I.
[8] ECF No. 411 in Melot I.
[9] Pursuant to 26 U.S.C. § 7402, the district court has jurisdiction to appoint receivers, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws.

Mr. and Mrs. Melot failed to prove that Mr. Shaw unlawfully and fraudulently conveyed property to Mr. Roberson.  Mr. Melot may not re-litigate this issue now by the simple expedient of naming Mr. Shaw as a defendant in this subsequent action.  *See Lowell Staats Mining Co., Inc.* at 1276.

Similarly, in Melot I, the Melots failed to prove that Mr. Roberson sold, destroyed, rented or disposed of said property without Mr. Melot's consent or authority.  Of course, such an approach would have been futile because Mr. Roberson purchased this property pursuant to court order which provided that the Receiver was authorized and directed to convey title to Mr. Roberson. (*See* ECF No. 411 in Melot I).  Clearly Mr. Melot's consent or authority is not necessary for Mr. Roberson to do as he wishes with this property, given that he is now the rightful owner of this property.  Nevertheless, Mr. Melot had the opportunity, in Melot I, to litigate this issue and could have made Mr. Roberson a party to that lawsuit but failed to do so.  Mr. Melot may not now re-litigate this issue by the simple expedient of naming Mr. Roberson as a defendant in this subsequent action.  *See Lowell Staats Mining Co., Inc.* at 1276.

Although Defendants Lee and Roberson were not named parties in Melot I, they certainly could have been named as parties, and in any event, the propriety of their conduct has already by determined by the Court in Melot I. The Melots were unsuccessful in Melot I, in establishing that the imposition of tax liens, appointment of Receiver and sales of properties were improper in any way.

Given these circumstances, the Court concludes that the second element for res judicata has been met.

**C. Identical Claims; Same Transaction or Occurrence**

In *Petromanagement Corp. v. Acme-Thomas Joint Venture,* 835 F.2d 1329, 1335 (10th Cir. 1988), the Tenth Circuit adopted the transactional approach of Restatement (Second) of Judgments to determine what constitutes a "cause of action" for claim preclusion purposes. The transactional approach provides that a final judgment extinguishes:

> all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose …. What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, [and] whether they form a convenient trial unit. . . .

*Id.* at 1335 (quoting Restatement (Second) of Judgments § 24). "Under [the transactional] approach, a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event or occurrence. All claims arising out of the transaction must therefore be presented in one suit or be barred from subsequent litigation." *Nwosun v. General Mills Restaurants, Inc.,* 124 F.3d 1255, 1257 (10th Cir. 1997).

It is clear to the Court that all claims raised by Mr. Melot in the immediate lawsuit are predicated on the same transaction, event and /or occurrence that were squarely addressed and fully resolved in Melot I. The relevant facts in this case are substantially similar (if not identical) to those in Melot I. In that litigation, the Court ordered foreclosure of federal tax liens on the Melots' real and personal property, appointed Mr. Shaw as Receiver, and ultimately confirmed the sale of all of the Melots' properties to Lee Roberson, applying the net sales proceeds to their outstanding federal income tax liabilities. For purposes of this res judicata analysis, the Court considers this to be all one "transaction" and accordingly the third element for res judicata has been met.

**V.  Conclusion:  This Matter is Barred by Res Judicata**

In this lawsuit, Mr. Melot is contesting the same federal tax liens, seeking to quiet title to the same properties, and challenging the sale of those properties that were involved in Melot I. In that case, the District Court specifically ruled on the disposition of the Melots' property and confirmed by order the sale of their property by Receiver Shaw to Mr. Roberson for $1,125,000. The Tenth Circuit affirmed all District Court orders in all respects.  Hoping for a different result, Mr. Melot has filed this lawsuit, however such an effort must be precluded by res judicata for the reasons stated herein, and accordingly this matter is hereby **dismissed,**

**III.  Potential Filing Restrictions**

Mr. Melot's three lawsuits, detailed herein, regarding the imposition of tax liens and ultimate sale of his property have reached the point of being an abuse of the federal judicial system.  Federal courts have the inherent power to regulate the activities of abusive litigants by imposing carefully tailored restrictions under appropriate circumstances.  *See Judd v. Univ. of N.M.,* 204 F.3d 1041, 1043-45 (10th Cir. 2000); *Tripati v. Beaman,* 878 F.2d 351, 352 (10th Cir. 1989).  Injunctions restricting further filings are appropriate where:  (1) the litigant's lengthy and abusive history is set forth; (2) the court provides guidelines as to what the litigant may do to obtain its permission to file an action; and, (3) the litigant receives notice and an opportunity to oppose the court's order before it is implemented.  *See id.* at 353-54.  Because Mr. Melot's repetitive filings must come to an end, the Court warns him that any additional frivolous and repetitious filings regarding the same tax years and sale of his properties involved in Melot I may result in the imposition of filing restrictions.

This admonition does not apply to a notice of appeal from the Final Judgment in CIV No. 15-235 LH/CG only.

**WHEREFORE, IT IS HEREBY ORDERED,** for the reasons stated above, United States' Motion to Dismiss Case with Prejudice (ECF No. 10) and Lee Roberson's Motion to Dismiss (ECF No. 27) are hereby **granted** and this matter is **dismissed.**

**IT IS SO ORDERED.**

_____
SENIOR UNITED STATES DISTRICT JUDGE